IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC, ) | |
| ) | |
| Plaintiff, ) | No. 12 C 9655 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| JOHN DOES 1-25, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Plaintiff Malibu Media, LLC, a California film company that owns the copyrights to a large number of adult films, has sued 25 anonymous defendants known to plaintiff only by their alleged use of Internet Protocol ("IP") addresses. Plaintiff alleges that defendants committed direct and contributory infringement by copying, distributing and sharing what the complaint defines as plaintiff's Works. Each Doe defendant is alleged to have illegally downloaded between six (Doe 1) and 53 (Doe 9) films. After filing an amended complaint, plaintiff sought and was granted leave to serve third party subpoenas on defendants' Internet Service Providers ("ISPs") to determine the names associated with the IP addresses. The court ordered plaintiff to keep the names anonymous until further order. Subsequent to that order, Doe defendants 5, 8, 9, 14, 15 and 17 moved to proceed anonymously, to quash the third party subpoenas seeking information as to them, and to have the claims against each of them severed from the claims against all other defendants. John Doe 19 has filed an identical motion (all moving Doe defendants are represented by the same counsel). The court has already ordered that all defendants' names be kept anonymous and plaintiff does not oppose the moving defendants' motions to proceed anonymously. Therefore, those portions of the motions are granted. For the

reasons described below, the court denies all motions to quash, but severs all defendants except John Doe 1 from the instant case.

## BACKGROUND

This is just one of hundreds, or perhaps thousands, of cases filed by plaintiff against unnamed defendants who plaintiff alleges have illegally downloaded plaintiff's copyrighted Works using the BitTorrent protocol. According to the complaint, BitTorrent is one of the most common peer-to-peer file sharing protocols used to distribute large amounts of data. Its popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. It does this by allowing users to join a "swarm" of host computers to download and upload from each other simultaneously, rather than downloading a file from a single source computer.

To join a swarm and use the BitTorrent protocol to transfer data, a user must first download and install a "BitTorrent Client," which is a software program that implements the BitTorrent protocol. Plaintiff alleges that each defendant has installed a BitTorrent Client on his or her computer. Once installed, the BitTorrent Client serves as the user's interface during the process of uploading and downloading data.

A BitTorrent user who wants to upload a new file is called an "initial seeder." The initial seeder starts by creating a "torrent" description file using the BitTorrent client downloaded on to his or her computer. The BitTorrent Client takes the targeted computer file or "initial seed" (in the instant case a copyrighted work), and divides it into identically sized groups of bits called "pieces." The BitTorrent Client then gives each "piece" a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file. Individuals

who join the swarm to download and distribute data are called peers. A peer in the process of downloading is often called a "leacher." A peer who has already received a complete copy of the file but remains in the torrent so others can download pieces from him is called a "seeder." Every torrent requires at least one seed. See Malibu Media, LLC v. Reynolds, 2013 WL 870618 at *2 (N.D. Ill. March 7, 2013) (Kendall, J.). As long as a peer remains connected to a swarm, either as a leacher or a seeder, other peers may download pieces from his or her computer.

When a peer receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded by the torrent file for that piece to test that the piece is error free. In this way the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and ensure that the piece is authentic and uncorrupted.

Torrent files also have an "announce section," which specifies the Uniform Resource Locator ("URL") of a "tracker," and an "info" section, containing suggested names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by BitTorrent Clients on peer computers to verify the integrity of the data they receive. The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides the peer with the URL addresses. The tracker computer or computers direct the peer user computer to other peer user computers that have particular pieces of the file on them and facilitates the exchange of data among the computers. Depending on the BitTorrent Client, a tracker can be either a dedicated computer (centralized tracking), or each peer can act as a tracker (decentralized tracking).

"Torrent Sites" are websites, such as www.TorrentZap.com, that index torrent files that are currently being made available for copying and distribution by persons using the BitTorrent

protocol. Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, other peers begin to download and upload the computer file to which the torrent is linked using the BitTorrent protocol and BitTorrent Client that the peer has installed on his or her computer. The BitTorrent protocol causes the initial seed's computer to send different pieces of the file (the copyrighted work) to the peers seeking to download a file. Once a peer receives a piece of the file it starts transmitting that piece to other peers. Thus, all the peers and seeders work together in the "swarm." According to plaintiff's complaint, each of the unnamed defendants participated in the same swarm and directly interacted and communicated with other members of that swarm. Once a peer has downloaded the full file, the BitTorrent client reassembles the pieces and the peer is able to view the file (in the instant case a number of motion pictures ("Works") film). If the peer remains connected to the swarm, that peer becomes an additional seeder, continuing to distribute different pieces of the file to other leacher peers.

## DISCUSSION

Moving defendants first contend that plaintiff's subpoenas to the third party ISPs should be quashed, arguing that the subpoenas will not result in the identification of the alleged infringers. According to defendants, obtaining the name and contact information for the person to whom an ISP sends its monthly bill bears no rational relationship to who may have actually accessed plaintiff's copyrighted Works.

Fed. R. Civ. P. 45(a) permits the issuance of subpoenas to produce documents and tangible things in a person's custody or control. The Rule requires a court to quash or modify a subpoena if it: (1) fails to allow a reasonable time for compliance; (2) requires a person who is neither a party nor a party's officer to travel more than 100 miles; (3) requires disclosure of

privileged or other protected matter, if no exception or waiver applies; or (4) subjects a person to undue burden. Fed. R. Civ. P. 45(c)(3)(A)(I-iv). The party seeking to quash bears the burden of demonstrating that the subpoena falls within one of these categories.

As an initial matter, the court notes that the moving defendants seek to quash subpoenas served to non-party ISPs. As a general matter, a party lacks standing to quash a subpoena issued to a non-party unless the party has a claim of privilege attached to the information sought or unless the subpoena implicates the party's legitimate privacy interests. See Hard Drive Productions v. Does 1-48, 2012 WL 2196038 at *3 (N.D. Ill. June 14, 2012). The district courts in this circuit are divided on the issue of whether an anonymous defendant accused of copyright infringement has standing to object to a subpoena issued to his ISP. See Reynolds, 2013 WL 870618 at *5 (comparing cases). Those cases that find standing do so on the basis that the party has "at least a minimal privacy interest in the information requested by the subpoenas . . .." Sunlust Pictures, LLC v. Does 1-75, 2012 WL 3717768 at *2 (N.D. Ill. Aug. 27, 2012). Those cases that hold that the parties lack standing generally conclude that "because internet subscribers must convey their identity and other information to an ISP in order to establish an account, they do not have a reasonable expectation of privacy in their subscriber information." Hard Drive Productions, 2012 WL 2196038 at *4. Nor can a party rely on the First Amendment to remain anonymous "because the First Amendment does not protect copyright infringement and to the extent anonymity is used to mask copyright infringement or to facilitate infringement by other persons, it is unprotected." Id. (quoting Arista Records, LLC v. Doe 3 , 604 F.3d 110, 118 (2d Cir. 2012)).

Although this court agrees generally that defendants lack standing to challenge the instant third party subpoenas, it need not reach the issue because even if defendants have standing there is no merit to their challenge to the subpoenas. Their argument that the subpoenas should be quashed because the information sought will not itself identify the actual infringers demonstrates a lack of understanding of the basic scope of discovery under the federal rules. "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). And, relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Id.

Obviously, identifying the customers associated with the IP addresses of which plaintiff is aware is relevant to its claims. Even if the customer associated with the IP address is not necessarily the person that illegally downloaded plaintiff's Works, the customer's name is the first step in identifying the proper defendant. Consequently, defendants' motions to quash the subpoenas are denied.

**Motions to Sever**

The moving defendants next argue that they have been improperly joined as defendants with each other and with the other Doe defendants. Persons may be joined as defendants in one action if any right to relief is asserted against them jointly, severely, or in the alternative with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences, and any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Although "transaction or occurrence" is not defined in the Rule, courts generally interpret the terms as "comprehend[ing] a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." Reynolds, 2013 WL 870618 at *8 (quoting Lozada v. City of Chicago, 2010 WL 3487952 at *2 (N.D. Ill. Aug. 30, 2010). Defendants argue that the claims against them should be severed because plaintiff's allegations do not suggest that any of the defendants exchanged any piece of the seed file with any other named defendant in the case. Indeed, the exhibits attached to the complaint seem to demonstrate that the moving defendants have not exchanged information with each other. Thus, defendants argue that plaintiff's claims against each of them are separate and do not arise out of a series of transactions or occurrences.

Once again, district courts within this circuit, as well as across the country, have reached differing conclusions on this issue. Some courts have held that joinder is permitted if defendants allegedly joined the same swarm, regardless of wether they have exchanged information with each other. See e.g., Digital Sin, Inc. v. Does 1-76, 279 F.R.D. 239, 244 (S.D. N.Y. 2012) (" . . . it is difficult to see how the sharing and downloading actually alleged in the Complaint – a series of individuals connecting either directly with each other or as part of a chain or `swarm' of connectivity designed to illegally copy and share the exact same copyrighted file – could not constitute a "series of transactions or occurrences" for purposes of Rule 20(a).).

Other courts have determined that simply joining a common swarm is insufficient to support joinder under Rule 20(a). These courts generally conclude that the allegations must demonstrate that the individual defendants either have or at least could have distributed files or pieces among themselves. Thus, those courts reject joinder unless the complaint alleges that the

7

defendants participated in the same swarm at the same time. See Sunlust Pictures, LLC v. Does 1-75, 2012 WL 3717768 at *4 (N.D. Ill. Aug. 27, 2012).[1]

Once again, the court need not reach the issue because under the circumstances of the instant case, even if joinder is permitted the court elects to sever under Rule 21, which allows the court to add or drop a party at any time. In the instant case, plaintiff's exhibits demonstrate that the unidentified Doe defendants downloaded different Works. For example, John Doe 1 allegedly downloaded six Works, while John Doe 9 allegedly downloaded 53 Works. The complaint fails to allege even that every named defendant downloaded at least one common Work. Thus, while the complaint alleges that all defendants joined the same swarm, the exhibits suggest otherwise. In any event, the case against Doe 9 is obviously far more involved than the case against Doe 1. Even if Doe 9 downloaded all of the same six movies that Doe 1 allegedly downloaded, Doe 1 would be forced to sit idle while Doe 9 defended as to 47 other films. The same is true with respect to the other Doe defendants. Thus, individual issues would eliminate any judicial economy that might be achieved through the joinder of these particular Doe defendants. Accordingly, the court exercises its discretion under Rule 21 to sever the instant case into 21 separate cases.[2]

## CONCLUSION

For the reasons stated above defendants' motions (Doc. 16, 19) are granted in part and denied in part. The motions to quash are denied. Pursuant to Fed. R. Civ. P. 21, all remaining

---

[1] For a more thorough review of the differing opinions on the joinder issue, see Judge Kendall's comprehensive opinion in Reynolds, 2013 WL 870618 at *8-14.

[2] During the pendency of this motion plaintiff has voluntarily dismissed Does 4, 10, 12 and 13.

defendants are severed from this case with the exception of John Doe 1. The clerk is ordered to sever John Does 2, 3, 5-9, 11, 14 through 25, from this case, to treat the claims against those defendants as separate actions and to assign each a separate case number. Plaintiff is directed to file separate amended complaints in each new case number containing only its claims against that particular individual defendant. John Doe 1 is the only remaining defendant in the instant case.

**ENTER:** April 24, 2013

_____
**Robert W. Gettleman
United States District Judge**